IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALJAWON DAWYANE MILES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:18-CV-339-KFP |
| | )            (WO) |
| | ) |
| MR. MCDONALD, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the Court on a complaint filed by Aljawon Miles, an indigent state inmate, against Joshua McDonald and Rachel Lewis Hopkins, both of whom serve as Probation and Parole Officers for the Alabama Board of Pardons and Paroles. Miles alleges that Defendants violated his constitutional rights due to their participation in the probable cause hearing where he alleges his parole was unlawfully revoked. He sues the officers in their individual and official capacities.

Specifically, he claims that Defendants failed to provide him the required parole revocation hearing. He also claims that they failed to contact witnesses who wanted to testify at his hearing and that a piece of exculpatory evidence was thrown in the trash. Finally, he claims that Defendants failed to provide him an opportunity to confront the State's witnesses. Doc. 1 at 3. He asks the Court to "reinstate" his probation and seeks damages of 1.1 million dollars. *Id.* at 4.

By consent of the parties, on June 13, 2018, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Doc. 17. Thereafter, Defendants filed special reports and relevant evidentiary materials addressing the claims for relief raised by Miles. In these filings, Defendants deny that they violated Miles' due process rights and allege that they are immune from suit. Doc. 19 at 1; Doc. 21.

After reviewing the special reports filed by Defendants (Doc. 19; Doc. 21), the Court issued an order on August 22, 2018 directing Miles to file a response to each of the arguments set forth by Defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 22 at 1-2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff to file a response to the order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 22 at 3.

Miles filed a response to these reports on October 5, 2018. Doc. 41. Then, on November 2, 2018, he filed a second response. Doc. 43. Pursuant to the directives of the orders entered in this case, the Court now treats Defendants' reports collectively as a

motion for summary judgment and concludes that summary judgment is due to be granted in favor of Defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to

support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593-94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This Court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495

F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Miles' pro se status alone does not compel this Court to disregard elementary principles of production and proof in a civil case. The Court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the Court finds that Miles has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of Defendants.

**III.   FACTS**

Miles brings due process claims against defendant state parole officers for their roles in a probable cause hearing, held by a hearing officer for the state parole board on May 24,

2017, based on Miles' alleged violations of the Sex Offender Registration and Community Notification Act ("SORNA"). The procedural history that resulted in the instant action is convoluted, but necessary for a complete understanding of Miles' claims.

The undisputed facts before this Court demonstrate that, on January 1, 2001, Miles was convicted of the offense of rape in the second degree in the Circuit Court of Russell County. He also has been convicted of offenses in Georgia and Kansas. Doc. 19-1 at 1. In October 2007, he was indicted for a violation of Alabama's former Community Notification Act. *See State v. Miles*, CC-07-710, Circuit Court of Russell County, Alabama. Subsequently, he plead guilty to these charges.

Thereafter, on July 29, 2009, an indictment pursuant to 18 U.S.C. § 2250(a) was filed against the plaintiff in *U.S. v. Miles*, 3:09-cr-132-WHA, in the United States District Court for the Middle District of Alabama for violations of SORNA due to his failure to register as an offender at his new residence in Crawford County, Kansas. Miles pled guilty and was convicted of this charge in June 2010. He was sentenced to 24 months in federal prison and was placed on probation following his release from prison. Also, in August 2009, his probation for the Community Notification Act conviction in Russell County was revoked by order of Circuit Judge Albert L. Johnson due to his failure to receive permission from his probation officer to change his residence and for failure to pay court ordered monies. Doc. 19-5 at 1.

In February 2016, a transfer request under the Interstate Commission for Adult Offender Supervision was made from Kansas to Alabama for supervision of Miles'

probation as a registered sex offender. Doc. 19-7. In May 2017, Miles was arrested in Phenix City, Alabama for violations of SORNA. The probable cause hearing for the State of Kansas on the SORNA violations in Russell County was held on May 24, 2017 before a hearing officer for the state parole board. Doc. 19-1 at 2; Doc. 19-3 at 2. The hearing officer found probable cause existed that Miles violated his conditions of parole by improperly changing his residence and by living within 2,000 feet of a school. Doc. 19-1 at 2; Doc. 21-3 at 1-8. The findings of this hearing were reported to Kansas for their determination of the future of Miles' supervision status. Doc. 19-3 at 2. Thereafter, in June 2017, Miles' term of supervised release imposed in *U.S. v. Miles*, 3:09-cr-132-WHA, was revoked based upon these SORNA violations. Doc. 21-7 at 1-5. The state released its probation hold on Miles, and he made bond on the state SORNA charges. Doc. 19-1 at 2. Miles was placed in federal prison for 24 months.

## IV.   DISCUSSION

### A.   Plaintiff Lacks Standing to Bring this Action

It is undisputed that Miles was placed in federal custody, serving a 24-month sentence for violations of SORNA. Doc. 21-1. Indeed, in June 2017, Miles' term of supervised release imposed in *U.S. v. Miles*, 3:09-cr-132-WHA (M.D. Ala.), was revoked based upon these SORNA violations. Doc. 21-7 at 1-5. Importantly, at the time of the probation hearing held in the State of Alabama, Miles was not on probation in Alabama. Doc. 21-1. Rather, Alabama held this probable cause hearing for the State of Kansas pursuant to the Interstate Commission for Adult Offender Supervision compact. Doc. 19-

3 at 2, 19-6. Following the hearing, where probable cause was found as to both SORNA charges (Doc. 21-3), the report of the hearing was forwarded to Kansas. Doc. 19-1 at 2.

On June 28, 2017, the Alabama probation office received notice that Miles' federal probation had been revoked, and he was ordered to serve 24 months in federal prison. *Id.* A case-closure notice was submitted to Kansas and the Alabama interest was closed at that time. *Id.* Thus, the actions of the state parole officers about which Miles complains did not result in nor affect his incarceration in federal prison because this incarceration is premised on the revocation of his supervised release in a separate federal conviction in *U.S. v. Miles*, 3:09-cr-132-WHA (M.D. Ala.). Doc. 21-7 at 1-5.

The United States Supreme Court has clearly stated that Article III of the Constitution limits jurisdiction of the federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). The case and controversy requirement, referred to as "justiciability," presents an important limit on the power of the federal courts, and has three components—ripeness, mootness, and standing—which operate to designate those cases appropriate for consideration and resolution by a federal court. *See Socialist Workers Party v. Leahy*, 145 F. 3d 1240, 1244 (11th Cir. 1998) (citations omitted). At an "irreducible constitutional minimum," the standing requirement mandates that the plaintiff must have suffered an "injury in fact" that is "likely" and not "merely speculative." *Id*. (citing *Lujan,* 504 U.S. at 560-61). Importantly, standing also requires that there is a "causal connection between the injury and conduct complained of -- the injury has to be *'fairly . .*

. *trace[able] to the challenged action of the defendant,* and not . . . th[e] result of the independent action of some third party not before the court.'" *Id.* (emphasis added).

In the instant action, the facts are undisputed that Miles' supervised probation was revoked by this Court and he was incarcerated in federal prison serving a 24-month sentence on this basis. Doc. 21-7 at 1-5. Accordingly, the Court concludes that the injury complained of by Miles—revocation of his probation—is not "fairly traceable" to the actions of the defendant state parole officers at the probable cause hearing held by a state parole hearing officer. *Id.* Indeed, because the actions complained of by Miles resulted from federal proceedings in which the defendant state parole officers played no part, the Court concludes this action is due to be dismissed because Miles has no standing to prosecute this action. Although the Court could dismiss this action solely on the basis of lack of standing, the Court will hereafter consider Defendants' claims of immunity.

### B. Absolute Immunity — Official Capacity Claims

To the extent Miles requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution)). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly, Miles' claims against Defendants in their official capacities for money damages are due to be dismissed.

### C.     Quasi-Judicial Immunity — Individual Capacity Claims

Insofar as Miles seeks monetary damages from Defendants in their individual capacities for actions relative to their roles in his probable cause hearing before the state court, "absolute" quasi-immunity protects Defendants from suit for money damages brought against them in their individual capacities. *See Holmes v. Crosby*, 418 F. 3d 1256, 1258 (11th Cir. 2005) ("[P]arole officers enjoy immunity for testimony given during parole revocation hearings when they act within the scope of their duties."). Further, the Eleventh Circuit has specifically held that probation officers receive immunity in preparing presentence investigation reports. *Hughes v. Chesser*, 731 F. 2d 1489, 1490 (11th Cir. 1984).

Miles sues Defendants for their roles in his probable cause hearing and alleges their actions resulted in the unwarranted revocation of his parole. Specifically, he complains that Defendants failed to contact witnesses, destroyed exculpatory evidence, and prevented him from cross-examining witnesses. Defendants adamantly deny these claims and present testimony that controverts Miles' allegations. However, the Court need not specifically address the merits of these claims because "absolute" quasi-immunity protects Defendants from payment of monetary damages for their roles that were in the scope of their duties in preparing for and participating in Miles' probable cause hearing. Thus, because Miles lacks standing to pursue this action and because immunity shields Defendants from the claims made, the Court concludes this action is due to be dismissed.

## V.  CONCLUSION

For the above stated reasons, the Court concludes that Defendants' Motion for Summary Judgment is due to be granted.  Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment (Docs. 19 and 21) is GRANTED and this action is DISMISSED with prejudice.

A final judgment will be entered separately.

DONE this 20th day of January, 2021.

                              /s/ Kelly Fitzgerald Pate
                              KELLY FITZGERALD PATE
                              UNITED STATES MAGISTRATE JUDGE